FRANCIS M. HOAG, appellant,

*v.*

EDWARD SAYRE et al., respondents.

1. Where there are three encumbrances on the same property, the first of which is entitled to priorty over the second, but is subordinate to the third, which is subordinate to the second, they will be marshaled as follows : the third, if it be for as large a sum or a larger sum than the first, will be paid to the extent of the sum secured by the first; then the second encumbrance will be paid in full if the property is sufficient, and then the residue to the third, if there be a residue; and then the first incumbrance will come in.   The principle of *Clement* v. *Kaighn, 2 McCart. 48,* approved and developed.

2. A took a chattel mortgage for $2,150 and failed to record it; B, with knowledge of the first mortgage, took a second one for $1,160; C obtained a judgment for $3,000 on the same day with the second mortgage, and made a levy.—*Held,* that C had the first lien to the extent of $2,150, the amount of the first mortgage; then that the residue of the judgment and the second mortgage should be paid *pari passu,* and, lastly, that the first mortgage should come in for payment.

On appeal from a decree advised by the vice-chancellor, and reported in *Sayre* v. *Hewes, 5 Stew. Eq. 652.*

On the 3d of December, 1877, the appellant, Hoag, obtained a chattel mortgage on the goods in question. This mortgage was not recorded in the proper county; it was to secure $2,150. On the 14th of February, 1878, Frederick Fisher, having knowledge of the prior mortgage, took a second mortgage on the same property to secure $1,160. Edward Sayre holds a judgment by confession against the mortgagor for $6,000 debt and $4 costs, which was entered on the 27th of February, 1878. Execution on this judgment was duly taken out and levied.

*Messrs. Field,* for appellant.

On January 11th, A. D. 1877, Margaret V. Hewes, then residing in Fulton street in the city of Newark, executed a chattel mortgage, *Exhibit D* 1 for appellant, Hoag, on certain chattels then being in a building in the city of Newark, to Francis M. Hoag, and this mortgage was, on the 12th day of January, A. D. 1877, filed in the office of the register of the county of Essex. This mortgage was given to secure indebtedness, of which *Exhibit D* 3 for Hoag is an itemized bill. December 3d, A. D. 1877, Margaret V. Hewes executed a second mortgage to Francis M. Hoag, to secure the whole of the above indebtedness, and some additional indebtedness, of which *Exhibit D* 4 is an itemized bill. At the time of taking the second mortgage, the first one was not given up or canceled, but is still in the possession of Mr. Hoag.

On February 14th, 1878, Margaret V. Hewes executed a third mortgage on the same chattels to Frederick Fisher, which was filed March 2d, A. D. 1878, in the office of the register of the county of Hudson.

The fourth mortgage was executed by Mrs. Hewes to Edward Sayre on the same chattels, which was also filed in the office of the register of Hudson county on the day of its date.

On February 27th, A. D. 1878, Edward Sayre, trustee &c., recovered a judgment by confession against Mrs. Hewes on bond and warrant of attorney, in the Essex circuit court, for $14,000.

On March 2d, A. D. 1878, Albert H. Hewes recovered a

Hoag v. Sayre.

judgment by confession on bond and warrant of attorney, in the same court, for $6,000.

Albert H. Hewes, immediately after its recovery, assigned his judgment to Edward Sayre. No consideration was paid for the assignment. Edward Sayre is the son-in-law, and Albert H. Hewes is the son, of Margaret V. Hewes.

Edward Sayre and Frederick Fisher knew, when they received the mortgages made to them, that Mrs. Margaret V. Hewes had previously executed the mortgages to Mr. Hoag.

They are both subsequent mortgagees with notice of the antecedent mortgages.

The question presented is, which of these mortgages and judgments have priority.

I. What is the effect of a recital in a chattel mortgage when the instrument states her residence to be in a certain place?

It is not necessary to an equitable estoppel that the party should design to mislead. If his act was calculated to mislead, and actually has misled another, who acted upon it in good faith, and in the exercise of reasonable care and diligence under all the circumstances, that is enough. *30 N. Y. 226.*

They are concluded by the recitals and admissions in the mortgage. *Hudson* v. *Winslow, 6 Vr. 437;* *State Bank of Elizabeth* v. *Chetwood, 3 Hal. 1.*

A court of equity will never lend its active aid to a party who, by artful silence and superior knowledge, has gained an unfair advantage over another who stands by and acquiesces in the recital. *6 C. E. Gr. 283; 1 Zab. 395, 403; Fonb. Eq. 124, 164; 3 Stock. 176; 1 Gr. Ch. 422.*

A court of equity will not aid one against another who has been misled, to his prejudice, by the conduct of the former. *8 C. E. Gr. 477; 1 Beas. 323.*

Where any one has done an act or made a statement which would be fraud on his part to controvert, and such act or statement has so influenced another that he has acted upon it, the party making it will be estopped from the power of retraction. *2 Stock. 510.*

A party cannot question a conveyance as fraudulent against

Hoag v. Sayre.

himself as a creditor who advised and counseled its execution. *1 Stock. 160.*

Recitals in a deed are binding on the parties and privies to it, and those claiming under them.     *West v. Pine, 4 Wash. C. C. 691.*

Whilst this question of registration depends in a great measure upon state legislation, the *lex loci contractus* must govern.     The various state courts have assented to and affirmed this doctrine; and if it be applicable to citizens of different states, is it any less so to citizens of different counties of the same state?     The courts do not require a chattel mortgage to be recorded in any county in which the property may be taken, or the mortgagor may remove to, nor do the laws of any state of this Union require it. One registration in conformity with the statute is sufficient as to individuals.     *Herman on Chattel Mort. 175.*

II. The taking of the second mortgage by the appellant, Hoag, on December 3d, A. D. 1877, did not extinguish the first.     *Gregory v. Thomas, 20 Wend. 17; Hill v. Beebe, 3 Kern. 557.*

The mere act of taking a new security from the same party, and upon the same property, does not merge or extinguish a prior one, where both are of the same quality and degree.     The debt was not paid, and until that was done, all collateral securities must stand.     *Butler v. Miller, 1 Comst. 500; Gregory v. Thomas, 20 Wend. 17.*

A subsequent security for the same debt, or for a debt of equal degree with a former, will not, by operation of law, extinguish it. *Manhood v. Crick, Cro. Eliz. 716; Norwood v. Griffin, Cro. Eliz. 727; Maynard v. Crick, Cro. Car. 86; Enos's Case, Lit. 58; Preston v. Preston, Cro. Eliz. 817; Hill v. Beebe, 3 Kern. 556.*

The lien continues until the debt is paid or extinguished, or the lien itself is destroyed by agreement between the parties. Until the debt is paid, all collateral securities stand; the security of a mortgage is in no way impaired.     *Herman on Chattel Mort. 129; Butler v. Miller, 1 N. Y. 500; Brinkerhoff v. Lansing, 4 Johns. Ch. 65; Gregory v. Thomas, 20 Wend. 17; Williams v. Starr, 5 Wis. 534; Chapman v. Jenkins, 31 Barb.*

Hoag v. Sayre.

*164; Bank &c.,* v. *Finch, 8 Barb. Ch. 293; Robinson* v. *Urquhart, 1 Beas. 515; Higgins's Case, 6 Rep. 45; 8 Johns. 54; 15 Johns. 555.*

Where a mortgage is given to secure a certain debt it will be a valid security for that purpose, whatever form that debt may assume if it can be traced. *Paterson* v. *Johnson, 7 Ohio St. 225.*

A subsequent security for a debt of equal degree with a former, will not, by operation of law, extinguish it. *Butler* v. *Miller, 1 N. Y. 500; Gregory* v. *Thomas, 20 Wend. 17; Higgins's Case, 6 Rep. 45; Rawden* v. *Turten, Browne, 74; Phelps* v. *Johnson, 8 Johns. 54; Preston* v. *Preston, Cro. Eliz. 817; Mumford* v. *Stocker, 1 Conn. 78; Cowell* v. *Lamb, 20 Johns. 407; Enos's Case, Litt. 58; Day* v. *Leal, 14 Johns. 404; Hamilton* v. *Cullender, 1 Dall. 420; Andrews* v. *Smith, 9 Wend. 53; Hill* v. *Beebe, 13 N. Y. 556.*

So that the taking of a second mortgage for the same debt will not relinquish the first without an express release of the first, and this even where the note and mortgage given in renewal is for a larger amount than the original. *Burnhisel* v. *Furman, 22 Wall. 170; Boyd* v. *Beck, 20 Ala. 703; Packard* v. *Kingman, 11 Iowa 219; Hill* v. *Beebee, 13 N. Y. 556; Hutchinson* v. *Swartsweller, 4 Stew. Eq. 207*, and the cases therein cited.

III. As between the chattel mortgages of Francis M. Hoag, Frederick Fisher and Edward Sayre, it is not material where Hoag filed his chattel mortgage. *Meech* v. *Patchin, 14 N. Y. 71; National Bank of the Metropolis* v. *Sprague, 6 C. E. Gr. 530; De Courcey* v. *Collins, 6 C. E. Gr. 360.*

IV. Whether the preferences sought by Albert H. Hewes and Edward Sayre, in obtaining the judgments, are not fraudulent as against the defendant Francis M. Hoag.

Albert H. Hewes is the son, and Edward Sayre is the son-in-law of the defendant Margaret V. Hewes.

Whatever puts a party upon inquiry amounts, in judgment of law, to notice, providing the inquiry becomes a duty, as in the case of purchaser and creditor, and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence. *Troup* v. *Hurlbut, 10 Barb. 354; 4 Kent's Com. 179.*

Hoag v. Sayre.

Notice to a subsequent attaching creditor of a valid mortgage, not recorded, is equivalent to a record. *Tucker* v. *Tilton, 55 N. H. 223 ; Gooding* v. *Riley, 50 N. H. 400 ; Patton* v. *Moore, 32 N. H. 382.*

Knowledge is regarded as equivalent to notice of the highest degree. *1 Lead. Cas. in Eq. 148 ; Crocker* v. *Crocker, 31 N. Y. 507 ; Wooster* v. *Sherwood, 25 N. Y. 278.*

If there be an existing mortgage at the time the judgment is rendered, that judgment will bind only the equity of redemption, whether the mortgage be recorded or not. *Jones on Mort.* § *460 ; Knell* v. *Green Street Building Ass., 34 Md. 67 ; Hackett* v. *Callender, 32 Vt. 97.*

If a creditor have actual notice of a prior unrecorded mortgage at the time of obtaining his judgment lien, he will hold his lien subject to such mortgage. *Jones on Mort.* § *461.*

V. Disregard of notice amounting to fraud. *Curtis* v. *Mundy, 3 Metc. 405.*

Notice, if sufficient to put him upon inquiry leading to the truth, will, in general, be regarded as good notice of the ultimate fact to be established. *Green* v. *Slayer, 4 Johns. Ch. 38 ; McDaniel* v. *Flower Brook Manufacturing Co., 22 Vt. 274; Maybin* v. *Kirby, 4 Rich. Eq. 105 ; Raritan Water Power Co.* v. *Veghte, 6 C. E. Gr. 463; Hoy* v. *Bramhall, 4 C. E. Gr. 563; Danforth* v. *Dart, 4 Duer 101; Sterry* v. *Arden, 1 Johns. Ch. 261 ; Pendleton* v. *Fay, 2 Paige 202 ; Tuttle* v. *Jackson, 6 Wend. 213 ; Hoy* v. *Bramhall, 4 C. E. Gr. 572 ; 4 Kent 179; Jones* v. *Smith, 1 Hare 43.*

It is bad faith for one to attempt the circumvention of the true owner of the property by endeavoring to anticipate him in gaining the advantage to be derived from an acquisition of the legal title. *Kennedy* v. *Daly, 1 Sch. & Lef. 355 ; Coble* v. *Nonemaker, 78 Pa. St. 501 ; Kepler* v. *Davis, 80 Pa. St. 153.*

VI. To what extent is the complainant, Edward Sayre, a creditor ?

VII. Mortgages to indemnify sureties. Rights of sureties and of creditors.

If the indemnity is against a contingent liability, there can be no substitution until the liability has become absolute. *Osborn* v. *Noble, 46 Miss. 449; Hall* v. *Cushman, 16 N. H. 462; Bank of Virginia* v. *Borseau, 12 Leigh 370.*

Thus a mortgage made to an endorser of a note for the maker's accommodation, to secure him against liability, is not accessary to the principal obligation, but simply a personal indemnity, depending upon the payment of the note by the endorser. Until the endorser pays the money on his endorsement, he can maintain no action for money paid. *Miller* v. *Henry, 3 Pa. St. 380; Gardener* v. *Cleveland, 9 Pick. 337; Shepard* v. *Shepard, 6 Conn. 37.*

VIII. Is a chattel mortgage valid as against a creditor of the mortgagee, unless the same is filed pursuant to the statute? *Astor* v. *Wells, 4 Wheat. 466; Wade on Notice* § 228.

Whoever is a purchaser at an execution sale, whether he be a creditor or not, is charged with constructive notice of all instruments affecting the title, executed and delivered by the debtor prior to the judgment, and subsequently recorded prior to the sale. *Jackson* v. *Post, 15 Wend. 588; Williamson* v. *Brown, 15 N. Y. 354; Whitehead* v. *Jordan, 1 You. & Coll. 313; Musgrove* v. *Benson, 5 Oregon 313; Wade on Notice* § 231.

Unregistered deeds are good against creditors, with sufficient notice to put them upon inquiry. *Dixon* v. *Doe, 1 Sm. & Marsh. 70; Priest* v. *Roll, 1 Pick. 164.*

The one who seeks to take advantage of an unregistered instrument, of the existence of which he has been fully informed, will be allowed to enjoy no special advantages, although the failure to record the mortgage was fraudulent as to others. *Pike* v. *Armstead, 1 Dev. Eq. 110.*

The omission to renew it did not impair its force as against a person standing in the situation of the complainant. *Sanger* v. *Eastwood, 19 Wend. 515.*

*Messrs. Coult & Howell,* for respondents.

I. Margaret V. Hewes, the mortgagor, at the time of

giving the chattel mortgage to Hoag, was a resident of Hudson county, and not of Essex county, where the chattels mortgaged were located.

Her statement that she was at that time a resident of Newark, in Essex county, if any such statement was made, could only affect the relations of the parties to the mortgage, and could not affect the rights of the complainant, a judgment creditor.

II. The statute provides that chattel mortgages must be filed in the county where the mortgagor resides, not where the chattels are located, in all cases where the mortgagor resides in this state.

If the mortgagor does not reside in this state, the mortgage must be filed in the county where the chattels are located.

III. The statute providing for filing chattel mortgages, makes such filing constructive notice only to subsequent *purchasers* and *mortgagees;* if they take, respectively, title to, or lien on, the chattels mortgaged after such filing, they are not purchasers or mortgagees in good faith—they are charged with notice.

But the statute does not affect or operate on the rights of judgment creditors; they are not charged with notice by the filing of the mortgage.

The words of the statute are that chattel mortgages "shall be absolutely void *as against the creditors of the mortgagor,* and *as against subsequent purchasers and mortgagees in good faith,* unless the mortgage, or a true copy thereof, shall be filed as directed, &c."

It makes two classes of persons as against whom the mortgage shall be void—

(1) The creditors of the mortgagor, who need not be such in good faith, in the sense used in the act.

(2) Subsequent purchasers and mortgagees *in good faith*—who alone, of all the world, are charged with notice by the filing.

IV. That justice could not be done to the complainant without putting him, in the first position, among the parties to this suit, and allowing him to be paid first out of the fund in the receiver's hands.

The opinion of the court was delivered by

BEASLEY, C. J.

I agree with the vice-chancellor in his settlement of the disputed facts in this case, but it seems to me that an error has crept into the decree with respect to the marshaling of the encumbrances. These liens are of this character: the mortgage first in date is held by the appellant, Hoag; then comes a mortgage held by Frederick Fisher, one of the defendants, and lastly is the judgment of the defendant Sayre. This first mortgage was not recorded in the proper county, and therefore is subordinate to the judgment, but it is paramount to the second mortgage, which was taken with knowledge of the existence of this first lien. In this state of things, the decree places the judgment and the first mortgage, by way of preference, before the second mortgage. This, as it seems to me, is unjust and inadmissible.

Upon what possible principle is the result in this case to be justified? Fisher, when he took his mortgage, knew that there was an antecedent mortgage on the same property, securing the sum of $2,150, with interest. He had his own mortgage duly recorded, so that it became incontestably the second legal lien; in this position of affairs this judgment is entered, and he at once finds himself, without any fault on his part, degraded from the position of a second encumbrancer to that of a third encumbrancer, and instead of the mortgaged property being subject to a claim prior to his own of but $2,150, it is subject to paramount claims which amount to the sum of $5,150. If such a principle be correct, it does not appear that any person, under any circumstances, can take a second or other subordinate mortgage upon property, without putting his interests in the utmost jeopardy. Under the prevalence of such a rule of law, a subsequent encumbrancer would be obliged to see that the *status* of the primary encumbrance was, in all respects, unexceptionable, under penalty, if a flaw should be undetected, of having his lien superseded by every judgment that might be entered at a later date. Such a rule would be as inexpedient as it would be unjust.

Hoag *v.* Sayre.

I cannot but think that any one who will look carefully into the subject will perceive that no rule applicable to such a juncture as this can be admissible that is not founded on the theory of leaving the second mortgagee in the position originally acquired by him, without respect to the neglects or shortcomings of the holder of the previous mortgage or the subsequent judgments of creditors.   Viewed in this aspect, this would be the result: the judgment creditor would, in the marshaling of these liens, take priority over the first mortgage; as between the judgment and that mortgage, the former must be first paid.   But with respect to the second mortgage, the judgment creditor, as such, has no claim to stand first, his only claim in that regard being his right to stand in the shoes of the first mortgagee, and assert all the privileges incident to that position.   But he can exact nothing further than such privileges; he can legally say that he has the paramount lien on the property to the extent of the sum secured by the first mortgage; but he cannot legally say that, with respect to the second mortgagee, he has any paramount lien beyond this.   No additional burthen can be put upon the land to the detriment of the second mortgagee.   If the judgment be for a sum greater than that secured by the first mortgage, then, by right of representation, such judgment will constitute the first lien to the full extent, and no further, of the first mortgage; if it be for a less sum than the first mortgage, it will take precedence and consume the first mortgage to that extent only.   It will be observed that by these adjustments the priority of the first mortgage, with regard to the second mortgage, will be exhausted, either partially or wholly, so that, to the extent of such exhaustion, it will be postponed to the second mortgage.

The doctrine thus propounded is but the development of the principle maintained and acted on in *Clement* v. *Kaighn, 2 Mc-Cart. 48.*   In that case there was a judgment without an execution; then a mortgage, and then judgments on which executions had been taken out.   These latter judgments were entitled to precedence over the first, but were subordinate to the mortgage. Chancellor Green decided that the first judgment on the mort-

36

Hoag v. Sayre.

gaged premises, by reason of the failure to sue out execution upon it, should be postponed to the encumbrance of the junior judgments, and, as an inevitable consequence, that it should be postponed to the mortgage which was prior to the junior judgments, and whose priority was not to be affected by any laches of the holder of such prior judgment.

In my opinion, the decree in this case should be modified so as to direct the payment of these encumbrances in this order, viz. : first, the judgment of Sayre to the amount secured by the first mortgage; second, the payment of the residue of such judgment and the second mortgage, *pari passu*, as they were concurrent liens, being entered on the same day; third, the payment of the first mortgage.

DIXON, J. dissenting.

I agree with the conclusions which the vice-chancellor has reached upon the facts.

But I dissent from the legal rule by which he fixes the order of priority, for I do not think it necessary to advance the complainant Sayre to the front against everybody, in order to give him the full benefit of his superiority to Hoag. ·

Nor do I assent to the rule laid down in the opinion just read, since I see no reason for regarding the complainant as substituted in the stead and rights of Hoag as against Fisher, merely because Hoag failed to comply with the registry laws. The effect of non-compliance with those laws is declared by themselves to be, not that the rights of him in default shall be transferred to the subsequent encumbrancers, but that his claim shall be void as to them.

Therefore, if there be three encumbrancers, A, B and C, in the order of time, and A's lien be prior to B's, and B's to C's, but, for A's omission to properly register his lien, it is void as to C's, then the fund should be disposed of as follows:

1. Deduct from the *whole fund* the amount of B's lien, and apply the balance to pay C. This gives C just what he would have if A had no existence.

2. Deduct from the *whole fund* the amount of A's lien, and

Hoag v. Sayre.

apply the balance to pay B. This gives B what he is entitled to.

3. The balance remaining after these payments are made to B and C is to be applied to A's lien.

To illustrate : Suppose the fund to be $5,000 ; A's lien to be $3,000 ; B's lien to be $4,000, and C's lien to be $2,000. Then, C receives $5,000, less $4,000=$1,000 ; B receives $5,000, less $3,000=$2,000 ; A receives $5,000, less ($1,000+$2,000),= $2,000.

Or suppose the fund to be $5,000, and each of these encumbrances to be $5,000; then it will appear that A, the first in time, will take it all ; since, except for the registry laws, he would clearly be entitled to it, and the registry laws simply prevent his taking anything by which C's security may be lessened. But C's security was nothing at the beginning, for B's prior lien covered the whole fund ; and C, therefore, has no right by which A's claim can be impaired.

Where B's and C's claims are concurrent in time and lien, but A is prior to B, and void as to C (as in the present case), the distribution should be as follows :

1. Divide the *whole fund* in the proportion of B's and C's claims, and give to C his proportion. Thus is A ignored in fixing C's rights.

2. Deduct from the *whole fund* the amount of A's lien, and apply the balance to B's claim.

3. The balance remaining after both payments goes to A.

By applying these rules to the case before us, it will be seen that, in my judgment, Fisher alone is injured by the decree below ; but as he is not a party to this appeal, the decree cannot be changed here for his sake, and therefore, I think, should be affirmed.

For affirmance—DIXON—1.

For reversal—BEASLEY, C. J., DEPUE, KNAPP, MAGIE, PARKER, REED, SCUDDER, VAN SYCKEL, CLEMENT, COLE, DODD GREEN—12.